19-23-47 Vernon Proctor versus Karen Krzanowski et al. Arguing is up to 15 minutes per side. Mr. Bostic, you may proceed for the appellant. Mr. Bostic, are you unmuted? We can't hear Mr. Bostic. Does that help? Yes. Yes. You may proceed. Good afternoon, your honors. That did not start out smoothly, but may it please the court. On behalf of Dr. Proctor, I think that the briefing was quite thorough. We went over again the things that happened in district court. There are three topics that I wanted to emphasize. I don't know if you heard me, but I did want to reserve four minutes. As you know, in the briefing, I focused on the district court's characterization of the claims, which flowed also from the defendant's characterizations of the claims. I went back to look at the complaint, and I realized that there are more paragraphs in the complaint that talk about the background, the dispute between the parties over their verification process. There are 15 paragraphs in the original complaint that actually talk about the elements of the two claims. It's understandable that the district court might have thought that we were really trying to base a claim on the verification process, but it's the lack of notice and the restriction that is the real gist of the claim. I hope that I put that in the substantive counts well enough to make that clear. There's always been a problem. Of course, the court does not have to follow the party's characterization, but we really did try to emphasize that it was the lack of notice. Of course, there's the underlying dispute about whether what they did actually fits the definition of restriction, but I think that's more of a factual issue. Did they limit his license? Did they restrict his license? That's probably not appropriate for 12b-6, but I think that's been fairly well fleshed out in the briefing. Unless the court has questions on that topic, I probably don't need to explain that any further. The other topic that I really wanted to focus on was the inclusion by the defendants of the other disciplines that they've imposed, not they, not these two defendants, but the agency on my client and the lawsuits that he's filed trying to protect himself. I really don't think those are appropriate for this 12b-6 status that we're in. I didn't file a motion to strike in the district court because those things are of public record. Obviously, if the district court wanted to rely on them, they're there to look up their published cases or their unpublished opinions. To me, what they do is they show the long ongoing dispute between Dr. Proctor and this agency, which I think works to our advantage to some extent, but I really do think at the end of the day, it was inappropriate for the defendants to put that in a Rule 12b status motion. The other thing that the district court did, and this is in the opinion, which is docket number 17, page ID number is 173. The district court talked about and claimed that Dr. Proctor's real complaint was the decision to stop accepting his or applications with his certification. And that's not the gist of the constitutional violation. That's a discussion about whether or not what they did was discretionary. And our position is that, first of all, when you decide to reject all applications containing his certification, you're no longer exercising discretion. It's also not appropriate to consider that a discretionary act for purposes of immunity because they don't have the authority to exercise that discretion in the first place. But it all boils down to this. Even if there was a rule or a regulation that required him to cooperate or required him to respond in a certain fashion and he didn't, he's still entitled to notice and an opportunity to be heard before they take some action that impacts the full exercise of his occupation. And that was the case. We discussed it quite a bit. It was Green from the United States Supreme Court that talked about the fellow that had the security clearance revoked by one agency that affected his employment, I think actually in the private sector. Mr. Bostic, I guess thinking about qualified immunity, I'm just struggling to understand how there can be a clearly established right to help someone procure something that's illegal under federal law. The right is, the property right is to the full exercise of his occupation. The constitutional deprivation is the lack of notice. I understand that. And we talked about so much in the complaint. But that's you're talking at such a high level of generality and for qualified immunity purposes, we've always said you have to talk in specifics, not generality. Here, the specific is your client wants a right to help someone procure something that's illegal. Right. It's illegal under federal law, remains illegal under federal law. Agreed. And so where does that specific right come from? That's where I'm struggling. I, when I was standing in a district court in front of Judge Quist, I think this exact discussion came up. And I knew when I walked in the courtroom that day, I was going in there to argue to a federal judge that my client was deprived of the right to do something that the end result of which was a federal crime. I understand that. But the state took the action. Now, if a federal agency. But then as I get all that, but then as Judge Sutton says, maybe you'd be better off in state court. Right. I mean, because you're coming to us and you're saying there's a clearly established right to help someone procure something that's illegal. Does that make sense? It does. But only if you agree that the claim is the, is the. Does a state ever have an obligation to give you fair process in helping you achieve, obtain something that's illegal? Well, I mean, Michigan's constitution has a due process clause in it. That's very similar to the federal. Sure. Then go to Michigan. But we also have another sentence in one of our constitutional provisions that talks about being treated fairly in all investigative and legislative investigations. But again, you're talking about Michigan law. Yes. But they didn't do one. And as you saw from what the defendants put in their motion, we did not do well in state court. And so the long term effect is, you know, we have a voter initiative in 2008. And then we put some bottom line is your honor, we're not going to get a fair shape in state court through the administrative process or our court of claims. It's not going to happen. We're not going to be treated fairly. But when the focus on, in other words, this takes me back to my fourth amendment comparison. If a defendant has a pile of marijuana in his house, that's illegal under federal law. But the police can't come in and get it without a search warrant. And if he's driving down the road with a bale of marijuana in the trunk of his car, the police have to either have a warrant or probable cause to search the car and get the marijuana. In other words, the fourth amendment still applies, even though he's violating federal law. And I think this is exactly the same. The government doesn't have an obligation to help you obtain something that's illegal. They just can't take it away without complying with the Constitution. But Dr. Proctor is not obtaining anything. The patient may ultimately pay it obtain it. Sure, but he's helping someone. He's aiding and abetting for lack of a better way of But he and we've been waiting for that to happen. But the problem is he's exercising his full rights of his license under state law. Signing the certification is all he's doing. But don't visit Michigan. I mean, I don't know the law on this, but I assume Michigan with prescriptions, different doctors can prescribe like a nurse can't prescribe certain narcotics, correct in Michigan? Correct. So why can't Michigan set up a process that says you can only prescribe this if you do these things? That seems perfectly reasonable to me. They well, they can't prescribe marijuana at all. Ever, for any reason, right? No, I get that. But my point is, is they can stop people who don't comply with their requirements from prescribing medications. And that's not unconstitutional, right? But there has to be a law or regulation that imposes that prohibition before the Board of Medicine can take action. And even when they do, they have to give notice and an opportunity to be heard so that the individual licensee can defend himself. And that's the gist of what didn't happen here was the notice. All right, Mr. Bostic. Well, once a defense of qualified immunity is asserted, it's your burden to establish that there is a violation of federal law or federal federal constitution and that that federal right is clearly established. And we normally require you to have a case that says that so that all reasonable actors would know that they're violating the constitution by what they did. And here the defendants say that they did not have reasonable notice of what they did was violated the constitution. What's the best case that you have that we can look at and says that this this put them on notice that all reasonable state defendants would know that what they did here violated the federal constitution? And your honor, that is the green. It's G. R. E. E. N. E. versus McElroy, three six U. S. 474. And that is the beginning of that discussion is on. It's in my principal brief at page 10. And I discussed it for a bit. And it's the fellow that had his security clearance yanked by the military boards. But that caused him to lose his civilian employment. I think that's probably my best one. All right, take a take a close look at that. Thank you. All right, Mr Fitzgerald. Thank you, Your Honor. Jennifer Fitzgerald, assistant attorney general for the with the Michigan Department of Attorney General, representing the defendants in this matter. Your Honor, sounds like the court has a has a good and thorough grasp of the points in the briefs in this matter. So I would like to start out by addressing some of the points that Mr. Bostic made. His position is that or he's saying now that his position is the lack of alleged lack of notice and a restriction on his client's medical license. His client's license was never limited. And he does not point to any limitation in the complaint that was actually levied against his license. Defendants cited the previous discipline in its brief as that as counsel recognized that was a public record. And it was appropriate for it to to include those in the case. With respect to the green opinion, the green opinion is not don't think it's applicable to this case to refute qualified immunity. In that case, the plaintiff was completely prevented from practicing his occupation by virtue of losing his security clearance. In this case, once again, defendant was or I'm sorry, plaintiff was never unable to practice his profession. He was never prevented from doing anything that his medical license prevented him from doing. Does he allege that his practice is limited to treating marijuana patients? I mean, because that's what this is that see like a marijuana doctor or something? I apologize, Your Honor. I didn't mean to speak over your question. No, he did not allege that that was not alleged in his complaint. But I would say that even if he had alleged that, that would not be outcome determinative, because he would still be able to practice other types of medicine. And in fact, the elements that go into issuing a certification for patients involve things like a physical examination of a patient determining what so he could still he could actually treat patients, but he just couldn't prescribe marijuana for them. But you have to other ways. Okay. And certainly he could still have he could still have continued to do that. The defendants never prevented him from doing that in the first place. From issuing certificates. So it's defendant's position, Your Honor, that the district court, that their that their opinion should be upheld, that the plaintiff's case should remain dismissed, that amending the complaint is futile. There was no federally protected right at issue here. There was no restriction or limitation on the plaintiff's license. He hasn't articulated what he was unable to do by virtue of defendants actions. defendants were simply trying to implement this rather new statutory and regulatory rule scheme, and were exercising their discretion in determining what was acceptable and what was not regarding the verification. And therefore the qualified immunity applies to prevent plaintiff's claims. There's no clearly established right to having certificates, medical marijuana certificates accepted, particularly those that cannot be verified. Plaintiff, I'm sorry, I'm used to being on the other side of these cases usually. So plaintiff is not, does not have the authority to dictate to the department how it can implement its verification system. And essentially reading plaintiff's complaint and his briefing, that seems to be really what he is most upset about, that he wanted to dictate to the department how the information it should provide to him and how they should verify these certificates. For what period of time were his certifications actually not being considered? Your Honor, I don't believe that that is part of the lower court record, but I believe... Well, the reason I ask the question is the district court says, or maybe this is in the complaint, I can't remember, but there's somewhere in what I have read recently that says on June, on a date in mid-June, he was notified that by two patients that the department had refused to accept any certifications from him. And then there's some other information that was in mid-2016, and then there's information that later that year the department began to accept his certifications again after he agreed apparently to comply with I'm not sure it's part of the lower court record, but if I may have permission, I believe I can answer that. Well, I didn't get it out of... I may not have gotten it out of the record, but I got it either out of the complaint or the district court opinion. I believe it was a roughly two-week period. Oh, okay. And in fact, in looking at plaintiff's complaint, I don't believe he actually ever alleged specifically that the department actually stopped accepting. I think it's phrased in the future tense, but I do believe it was a two-week period. I think with that, I will... I think the court seems to be very well-versed in this, and I think I will rest on my grief unless there are further questions. All right. Mr. Bostic, you'll have your rebuttal. Thank you, Your Honor. My second best case, I think, that establishes the right at issue would be Moody v. Michigan that's out of the Sixth Circuit in 2015. That's on page 14 of my brief, but I didn't go into the facts of that case a lot. And one of the reasons I didn't is because in that case, the Gaming Control Board, I think, is the entity that issued a decision to restrict the ability of a couple of horse trainers to... I don't know if they were administering medications or exactly what the but that was action by the board that actually had the authority to impact their license, as opposed to a couple of investigators or other people and bureaucrats. So, it's a little bit different, but it does talk about the... by yanking a certain part of their license, how they were unable to work in their field at all, which brings me around to this issue of Dr. Proctor being able to do other things. He most certainly could have. He could have seen patients for colds and cuts and bruises and all sorts of things. But if he were to continue certifying patients for medical marijuana, knowing that that patient's application would be rejected, but he took money from that patient, well, then the department would have come after him for lack of good moral character, because he's taking money knowing that he's not providing a service that has any meaning. Judge Gibbons, the period of time, you're pretty close. I think where you got the one piece of information is from their citation to the Court of Claims opinion that dismissed the case because it was moot. And they said that it was because he had started complying, they started accepting, therefore his lawsuit was moot in the front of the Court of that they started accepting them the first week of July, but she didn't. He was getting rejections well into July. So, you know, the memo didn't trickle down or whatever the problem was, but the overall time period was closer to a month. Now, just in wrapping up, Dr. Proctor absolutely does not care how these folks choose to do their verification. They can do it any way they want. Well, they can do it any way the regulation says they can. But what they can't do is arbitrarily impose rules, demand that he cooperate when there's nothing that requires him to cooperate, and then retaliate against him when he chooses not to do it the way they want him to do it. And the real important thing, which we alleged in the complaint, is that he never refused. He asked for more information and he explained there would be a delay if you don't give it to me. They chose not to. They chose not to put their requests in and that's clearly alleged in the complaint. With that, unless there are questions, I will wrap it up. We appreciate the argument both of you've given and we'll consider the case carefully. Thank you. Thank you.